Beck, Appellant, vs. Fond du Lac Highway Committee and others, Respondents.
Sadoff and others, Appellants, vs. Same, Respondents.

*May 11—June 6, 1939.*

For the appellants there was a brief by *Kelley & Boerner* of Fond du Lac, and oral argument by *Carl F. Boerner*.

For the respondents there was a brief by *Reilly & Cosgrove* of Fond du Lac, and oral argument by *Frank W. Cosgrove*.

WICKHEM, J.   Since one of the principal contentions in this case is that the trial court as a matter of law should have

held defendants guilty of negligence, it is necessary to briefly detail the facts. On December 31, 1937, plaintiff Beck was in the employ of plaintiff Badger Liquor Company, of which plaintiff Sadoff was the proprietor. His employment consisted of delivering beer. On that date, while driving north on Highway No. 41, he collided with a truck belonging to Fond du Lac county and operated by defendants Allen and Morgan under the alleged control and supervision of the individual members of the Fond du Lac County Highway Committee. The accident happened at about 7:30 in the evening, and it was quite dark. According to the evidence the county truck was facing north and was parked completely upon the gravel shoulder. It was equipped with the usual taillights and warnings. There were, however, no flare lights or fusees set behind the truck. The cab of the truck was equipped with a rear spotlight which was pointed toward the east ditch and the truck itself was on the east shoulder of the highway, that is to say, on the same side of the road as plaintiff was traveling. Another car proceeding south passed the truck when plaintiff was one thousand feet or so away from it. Plaintiff claims to have supposed that there were two cars approaching him abreast, one of them operating on the wrong side of the road with only one light. He slowed down and pulled off to the right, and when the car which was actually moving south passed him, he claims that he was confused by the lights of this car as well as the spotlight of the truck, and that when the car had passed him he made a quick turn to the left but was then too close to be able to clear it.

After the verdict an *ex parte* application was made to the trial court to extend the time for hearing and determining motions for a new trial. The trial court entered an order extending the time. The petition of plaintiffs' counsel states that to enable him fully to present motions after verdict petitioner secured a transcript of the testimony in said actions; and that since obtaining same he finds he needs further time

to file and present motions after verdict. In ordering the extension the trial court merely states:

"Upon the foregoing petition and upon the records and files in the above-entitled matter it is ordered."

Thereafter, in its decision the trial court concluded that since the order contained no statement of good cause and since there had been no showing of good cause in the petition, the court was without jurisdiction to make it and the order was void. Plaintiffs object strongly to this conclusion, but the objection is unfounded. The cases of *Lingelbach v. Carriveau,* 211 Wis. 653, 248 N. W. 117, 248 N. W. 922; *Borowicz v. Hamann,* 189 Wis. 212, 207 N. W. 426, and *Beck v. Wallmow,* 226 Wis. 652, 277 N. W. 705, are all to the effect that good cause must be shown and that the order must recite facts which constitute good cause. It is our conclusion that good cause was not shown by the petition. All the petition amounts to is a statement that petitioner needs more time. This is a conclusion which omits the premises upon which it is based. The order itself contains no recitation even of the conclusion that good cause has been shown. Hence, we conclude that plaintiffs' position is not well taken in this respect.

The next contention is that the negligence of defendants was established as a matter of law, and that all of the questions with respect to defendants' negligence should have been answered by the court. Before commencing a discussion of this, we advert to a matter that is not referred to in any way in the briefs. The defendants in this action are the Fond du Lac County Highway Committee, each of whom under his name and in his individual capacity is made a defendant. We discover no basis in law or fact for this attempt to hold liable the County Highway Committee, corporately or individually. Only the county or the persons actually operating the vehicle could sustain any liability in such a case as is here involved. The liability of the county in such a situation is disposed of

by the case of *Crowley v. Clark County,* 219 Wis. 76, 261 N. W. 221, and the matter is so fully discussed by the opinion in this case as to warrant no further exposition here. In view of our conclusion upon the merits, the character and extent of the liability of the actual operators of the vehicle is immaterial and calls for no discussion. This last comment also applies to the liability of the Highway Committee and its individual members, but in this instance we think that it will be of use to the bar to point out that neither the committee as such nor its individual members sustain a tort liability merely by reason of the fact that a truck belonging to the county has been negligently operated by the employees in charge of it. The County Committee and its members are merely representatives of the county.

In *Marinette County Hwy. Comm. v. Industrial Comm.* 227 Wis. 560, 562, 278 N. W. 863, an injured workman sought compensation against a county highway committee. The issue was whether the county or state was the employer. This court stated that there was "no room or excuse for an attempt to reach the employer, whether the state or the county, by proceedings against a mere committee of such an employer." It is our conclusion that had plaintiffs established negligent operation of the county truck by those in charge of it, this would not have established any liability on the part of the Highway Committee or its individual members.

Plaintiff relies upon sec. 85.06 (2) (d), Stats., which provides as follows:

"No person shall, during any period of time from one-half hour after sunset to one-half hour before sunrise, permit a motor truck, truck tractor, trailer or semitrailer to stand upon any traveled portion of a highway outside of the corporate limits of any incorporated city or village, unless such vehicle is protected by a burning fusee placed on the extreme left side of the vehicle, or by lights placed approximately one hundred twenty-five feet to the front and rear of the vehicle, to clearly indicate the presence of such vehicle."

Sec. 85.06 (2) (d), Stats., relates only to the traveled portion of the highway, and if as the jury found the county truck was standing off the concrete, the section has no application. The finding that the truck was off the traveled portion of the highway and entirely upon the shoulder is attacked as unsupported, but we conclude that the contention has no merit. The testimony is that the wheels were an inch or so off the concrete. It is argued that if this is true, the truck must have extended over the wheels and portions of it must have been encroaching upon the concrete. This is not a matter of which the court can take judicial notice. The record contains no description of the truck, and if its wheels were entirely off the concrete the jury was not bound to assume without evidence that some portion of it extended beyond the wheels and encroached upon the concrete. We conclude that sec. 85.06 (2) (d) is not applicable to the facts of this case.

Plaintiff also relies upon sec. 85.06 (2) (f), Stats., to the effect that:

"No spotlight shall be used as an auxiliary driving light on any motor vehicle operated on the highways of this state except when such spotlight is set or adjusted so that the rays of light shall be projected directly on the road surface at a distance not exceeding one hundred feet directly in front of the motor vehicle using such spotlight and to the right of the center of the traveled way."

This section authorizes the use of a spotlight provided the rays are directed not to exceed one hundred feet in front of the vehicle and to the right of the center of the traveled way. This section does not prohibit rear spotlights. It requires adjustments of spotlights so as to direct the rays down and to the right of the vehicle. It has no application here, and if it did the jury was entitled to conclude that this spotlight was directed at the ditch at the right of the road and that it could not have contributed causally to this accident either by blinding the driver of the plaintiffs' car or preventing him from

seeing the taillights and other markings that were otherwise in plain view.

Reliance is also had upon par. (g) of the same section, which reads as follows:

"No tractor, motor truck, road grader, road drag or other piece of road machinery used in road construction or maintenance shall be used upon any public highway in this state which is open to traffic by the public unless such machinery shall carry at least two red danger signals in the daytime and at least two red signal lanterns or lights in the nighttime. Such signals and lights shall be so displayed as to give adequate warning of the presence of such machinery and to show safe clearances for passing vehicles."

By the terms of this paragraph the fact that the road machinery was on the shoulder is of no materiality. Its provisions are much broader and relate to use upon any public highway open to traffic unless the danger signals are used. The difficulty with this branch of the case is that there is evidence to the effect that the rear of the truck was lighted as required by statute. It was equipped with three red lights on the rear of the cab and a taillight. It is not seriously contended in plaintiffs' briefs that these lights were not lighted or were not sufficient to satisfy the statute, but the contention is made that they were obscured by the spotlight and were for that reason not visible. What has heretofore been said concerning the spotlight disposes of this contention.

It is concluded that the evidence sustains the findings of the jury that the operators of the county truck were not guilty of negligence. It is also contended that there is no evidence to sustain a finding of Beck's contributory negligence, but in view of the foregoing conclusions we see no point in examining the contention.

Plaintiffs claim that several errors were committed which require that this court grant a new trial. Two of these asserted errors may be conveniently considered together. The first was the failure of the trial court to give instructions

upon the emergency rule. The second was the failure to instruct as to the burden of proof upon the issue of contributory negligence. We see no point in considering whether these instructions should have been given. At all events the failure to instruct in accordance with the request did not prejudice plaintiffs, in view of the fact that the jury found defendants wholly free from negligence. The doctrines of the proposed instructions were applicable only to the issue of Beck's contributory negligence and could not have affected the findings upon the issues relating to defendants' negligence.

It is next objected that the trial court improperly inserted instructions on right of way and upon the statute requiring a fifteen-foot clearance in the case of parked vehicles. While these instructions were doubtless unnecessary they were entirely correct, and it does not affirmatively appear that they operated to plaintiffs' prejudice.

It is further claimed that the trial court erroneously admitted evidence concerning offers of settlement in these cases. *Papke v. Haerle,* 189 Wis. 156, 207 N. W. 261. One of the plaintiffs, David Sadoff, was on the witness stand and was asked concerning certain conversations which incidentally disclosed some negotiation for settlement of the case. Later, evidence was introduced putting in issue Sadoff's version of the conversation. The court admitted this for impeachment purposes, and strictly limited its scope. The jury was specially instructed as to the limited purpose for which this evidence was admitted and under these circumstances we discover no prejudicial error. According to defendants' version of the conversation, Sadoff had entertained prior to trial a different view as to the blame involved from that asserted at the trial. This would constitute an admission and would come in upon the theory of multiple admissibility, although not admissible to show an offer of settlement. Being properly limited by the trial court, we discover no error.

The next assignment relates to improper argument by defendants' counsel. In an affidavit made after trial plaintiff Sadoff states that Mr. Cosgrove said in argument to the jury:

"I want you to show Sadoff, this Sadoff and all the Sadoffs and all of their kind who have come like a yellow dog from the Ghetto that they can't come here in this court and get money out of Fond du Lac county."

Assuming that the statement was made, it is·so highly inflammatory and improper as to be almost necessarily prejudicial in effect. The only evidence of the incident having occurred, however, is in an affidavit by one of the parties made after trial. The bill of exceptions contains no evidence that counsel made this statement or that objections were made to it or the court asked to admonish the jury to give such relief as was proper under the circumstances. Counsel denies in his brief having made the statement. Counsel for plaintiffs not having objected to the argument, or had it preserved for the bill of exceptions, we cannot consider the matter upon affidavit after trial. The attendant abuses and confusion if this court should enter into a trial by affidavit as to what occurred in the trial court compels us to reject that method. Normal and well-understood procedures make it a simple matter to remove all doubt as to the contents of the argument, and this court ought not to accept in substitute inferior and untrustworthy methods of proof. This is particularly true where statements or argument are concerned and where a slight departure in wording from what was actually said may materially change the meaning and effect.

Other errors are suggested without argument, and we shall not extend this opinion by discussing them. We have examined each assignment and have concluded that no prejudicial error was committed.

*By the Court.*—Judgment affirmed.